M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
333 University Ave.
Sacramento, CA 95825
Phone: 916.823.6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Jason T. Dennett*
**MILBERG, PLLC**
1700 7th Avenue, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

*[additional Plaintiff's Counsel listed on signature page]*

*Attorney for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT IGLESIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LEVI STRAUSS & CO.,<br><br>Defendant | NO. 3:26-cv-06100<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Robert Iglesias ("Plaintiff") on behalf of himself and all others similarly situated, by and through counsel, bring this action against Defendant Levi Strauss & Co. ("Levi" or "Defendant"). The allegations contained herein, which are based on Plaintiff's knowledge of facts pertaining to himself and his own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

PLAINTIFF'S CLASS ACTION COMPLAINT - 1

**NATURE OF THE CASE**

1. This class action arises from Levi's retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2. Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3. Major U.S. importers—including Levi—responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4. On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

5. As a consequence of that decision, importers who paid those tariffs—including Levi—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP").

6. The economic reality of the tariff regime, however, is that importers like Levi did not ultimately bear all the costs of the tariffs. Instead, the importers passed the elevated costs on to consumers in the form of higher retail prices.

7. Levi therefore collected the tariff costs from consumers through elevated pricing, while having the ability to seek refunds of the same tariff payments from the federal government.

8. Unless restrained by this Court, Levi stands to recover the same tariff payments twice—once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those funds.

9. Levi has made no legally binding commitment to return tariff-related overcharges to the consumers who actually paid them.

10. This lawsuit seeks to prevent that unjust result.

PLAINTIFF'S CLASS ACTION COMPLAINT - 2

11.    Plaintiff brings this action on behalf of millions of consumers who purchased goods from Levi during the tariff period and who paid inflated prices reflecting Levi's pass-through of unlawful tariffs.

12.    Plaintiff seeks restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

## JURISDICTION AND VENUE

13.    Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) at least one member of the class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

14.    The Court has personal jurisdiction over Defendant because Levi is headquartered in San Fransico, California, which is within this district, conducts significant business transactions in this District and because the wrongful conduct occurred in and emanated from this District.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business in located in in this District in San Fransico, California and a substantial portion of the events and conduct giving rise to the claims occurred in this District.

## PARTIES

18.    Plaintiff Robert Iglesias is a resident and citizen of Santa Ana, California. During the Class Period, Plaintiff Iglesias purchased goods from Levi that were subject to increased prices from the IEEPA tariffs, including Levi's 514 jeans and 505 jeans. Plaintiff Iglesias paid retail prices for those goods that were increased by Levi's tariff surcharge to account for the tariffs imposed on imported products. Plaintiff Iglesias would not have paid those higher prices, absent the unlawful tariffs and Levi's pass-through of those tariffs to consumers.

19.    Defendant Levi Strauss & Co. is a Delaware corporation with its principal place of business at Levi's Plaza, 1155 Battery Street, San Francisco, California 94111. A significant

portion of the products Levi sells are imported goods subject to IEEPA tariffs imposed by the United States government.

## FACTUAL BACKGROUND

### A.    Levi's Business

20.    Operating since the 1850s, Levi is one of the oldest and best-known apparel companies in the United States.  Levi manufactures, markets, and sells a variety of apparel for men, women, and kids including but not limited to jeans, shorts, shirts, overalls, sweatshirts, dresses, and skirts.

21.    Levi sells its products to consumers through retailers that are located throughout the United States, in Levi's brand stores, and online through retailers and its own website.

22.    Levi manufactures all its products outside of the United States, including in countries subject to IEEPA tariffs, such as Bangladesh, Pakistan, Cambodia, and Vietnam.[1] Thus, the IEEPA tariffs directly increased Levi's cost of importing merchandise into the United States.

23.    Levi acknowledged that it paid "approximately $80 million" in tariff charges through the first quarter of 2026,[2] and it has largely passed on these charges to consumers. Indeed, since at least September 2025, Levi has repeatedly stated that it would raise prices on consumers to offset the tariff charges.

24.    In April 2026, Levi's Chief Financial Officer Harmit Singh ("CFO Singh") "told CNBC that the company expects to receive around $80 million in refunds for tariffs it paid on importing denim and other apparel items from manufacturers around the world."[3]

///

///

///

---

[1]    Levi Strauss & Co., Form 10-Q at 27 (April 7, 2026), *available at* https://www.sec.gov/Archives/edgar/data/94845/000009484526000020/lvis-20260301.htm
[2] *Id.*
[3] Dan Mangan *et al.*, CNBC, *Trump says 'I'll remember' companies that don't seek tariff refunds* (April 21, 2026), *available at* https://www.cnbc.com/2026/04/21/trump-says-hell-remember-companies-that-dont-seek-tariff-refund.html (last visited May 7, 2026)

PLAINTIFF'S CLASS ACTION COMPLAINT - 4

**B.**    **The IEEPA Tariffs**

25.    Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries pursuant to a series of executive orders declaring national emergencies related to trade and supply chain concerns.[4]

26.    Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.[5]

27.    The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Levi.[6]

28.    Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Levi—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.[7]

29.    Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.[8]

---

[4] *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[5] *See* Reuters, *Trump Orders Tariffs on Canada, Mexico and China*, Feb. 1, 2025.

[6] *See* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[7] *See* U.S. Customs & Border Prot., *Importing Into the United States: A Guide for Commercial Importers*.

[8] *See* Reuters, *Businesses Sue Over Trump's Tariffs*, Apr. 2025.

PLAINTIFF'S CLASS ACTION COMPLAINT - 5

30. On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation and invalidated the tariff orders issued pursuant to that statute.[9]

31. The Supreme Court's decision effectively eliminated the legal basis for the IEEPA tariffs and created a pathway for importers that had paid those duties—including large retailers like Levi—to seek refunds of the tariffs previously collected by the federal government.

**C.    Tariffs Are Economically Borne by Consumers**

32. Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties.

33. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[10]

34. When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[11] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

35. Levi followed this same pattern during the tariff period. As a major importer of consumer goods, Levi faced increased costs resulting from tariffs on its products and took steps to address those cost pressures through pricing and merchandising decisions.

[9] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026)

[10] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[11] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.

PLAINTIFF'S CLASS ACTION COMPLAINT - 6

36.    As detailed below, Levi executives publicly acknowledged that tariffs would affect pricing decisions and the company's cost structure. In those communications, Levi leadership explained that tariffs increased the company's merchandise costs and required Levi to evaluate price adjustments and other operational responses designed to manage those additional expenses.

37.    As a result, consumers who purchased goods from Levi during the tariff period paid elevated prices reflecting the tariff-related cost increases incorporated into Levi's retail pricing.

**D.    Levi's Statements Regarding Tariff Related Price Increases and Refunds**

38.    Levi publicly acknowledged, early in the tariff period, that tariffs would increase its costs and place upward pressure on consumer prices.

39.    Since at least September 2025, Levi has been clear that it intended to continue to grow market share by increasing consumer prices to offset the impact of increasing tariffs. Specifically, during the Goldman Sachs Retailing Conference CFO Singh told retailers: "[t]he way I think about the brand is, I think we provide great price value to our consumers, and as long as we can do that, even in a higher tariff environment, even if after taking prices up a little, I think we'll be able to continue to grow market share. It's important to have the right product offers and then, you know, price products effectively. We are thinking through pricing. Everybody's thinking through pricing. You know, for us, it's more targeted pricing."[12]

40.    In October 2025, during Levi's third quarter earnings call, CFO Singh told investors that Levi would utilize price increases as a mitigation tool to offset tariffs. Specifically, he said "[l]ooking to 2026, we are continuing to take actions to offset the impact of tariffs. As a

---

[12] Goldman Sachs 32nd Annual Global Retailing Conference 2025 Transcript (Sept. 3, 2025), *available    at*    https://stockanalysis.com/stocks/levi/transcripts/380802-goldman-sachs-32nd-annual-global-retailing-conference-2025/

PLAINTIFF'S CLASS ACTION COMPLAINT - 7

reminder, these mitigation initiatives include promotion optimization, targeted pricing action, vendor negotiation, and further supply chain diversification."[13]

41.    Levi's pricing actions contributed to the company growing its profits. CNBC reported on Levi's ability to thrive despite the tariffs: "Levi Strauss's profits are growing more than Wall Street expected despite higher costs from tariffs, thanks to targeted price increases and a shift away from wholesalers, the company said Thursday as it reported fiscal third quarter results. During the quarter, Levi's gross margin grew 1.1 percentage points to 61.7%, up from 60.6% in the year-ago period and better than the 60.7% analysts had expected, according to StreetAccount."[14]

42.    CNBC also reported that Levi's "CEO Michelle Gass ["CEO Gass"] said the company has started to raise the price of some of its jeans and clothes and will hike more prices in the U.S. and other markets next year."[15]

43.    In November 2025, Yahoo! Finance reported further on Levi's willingness to tariff costs on to consumers, quoting CEO Gass as stating: "There's only so much you can absorb from the tariffs, because they're just very high."[16]

44.    Yahoo! Finance also reported on Levi's tariff mitigation efforts, which largely focused on having consumers bear to brunt of the tariffs: "Levi's approach to pricing is multifaceted: First, targeted and surgical pricing increases are being implemented, a measure also being taken by most apparel retailers (55% of executives expect further price increases in 2026 in response to tariffs). Second, the company is utilizing promotional levers, specifically pulling

---

[13]Levi Strauss & Co., Q3 2025 Earnings Call Transcript (Oct. 9, 2025), *available at* https://stockanalysis.com/stocks/levi/transcripts/362847-q3-2025/

[14] Gabrielle Fonrouge, CNBC, *Levi Strauss raises prices, helping to boost profit and outlook* (Oct. 9, 2025), *available at*    https://www.cnbc.com/2025/10/09/levi-strauss-levi-q3-2025-earnings.html (last visited May 7, 2026)

[15] *Id.*

[16] Nick Lichtenberg, Yahoo! Finance, *'There's only so much you can absorb from the tariffs, because they're just very high': Levi's CEO states the plain truth* (Nov. 24, 2025), *available at* *https://finance.yahoo.com/news/only-much-absorb-tariffs-because-194156554.html* (last visited May 7, 2026)

PLAINTIFF'S CLASS ACTION COMPLAINT - 8

back on discounts such as '20% off' events, which helps elevate the brand and mitigate tariff impact by improving margins. Third, the company is pricing for innovation, leveraging new products where consumers are 'likely willing to pay more.'"[17]

45.    Levi continued to raise prices into 2026 due to tariffs. In January 2026, during Levi's fourth quarter earnings call, CFO Singh addressed the negative impact of tariffs on Levi's gross margins stating that one way to offset the negative impact was to increase prices. Specifically, he said "Gross margin for the quarter was 60.8% of net revenues, contracting 100 basis points relative to last year, in line with our expectations, primarily due to the impacts of tariffs, which were partially offset by pricing actions and higher full-price selling."[18]

46.    The Wall Street Journal reported on the company's price increases in 2026, noting that "Levi Strauss raised prices last month in response to tariffs and is rolling out additional price increases this month. Among the items now costing more: ribcage straight ankle women's jeans, priced $10 more at $108, and original fit men's jeans that are $5 more at $84.50."[19] The WSJ also reported that Levi was going to continue to raise prices noting that the company "said it has more opportunity to raise prices on newer and higher-end products and is increasing prices by more modest amounts on lower-priced, entry-level items."[20]

47.    During Levi's earnings call for Q1 2026, CFO Singh again acknowledged that Levi's was passing the increasing costs of tariffs onto consumers. Specifically, he acknowledged that "[t]he decline in gross margin was partially offset by pricing actions and lower promotional activity. We continued to closely monitor the consumer response to pricing actions, and to date, we have not seen an impact on demand."[21]

---

[17] *Id.*

[18] Levi Strauss & Co., Q4 2025 Earnings Call Transcript (Jan. 28, 2026), *available at https://stockanalysis.com/stocks/levi/transcripts/390785-q4-2025/*

[19] Ruth Simon, The Wall Street Journal, *The Break Is Over. Companies Are Jacking Up Prices Again.* (Feb. 15, 2026), *available at* https://www.wsj.com/business/price-increases-consumers-businesses-b70e4542?mod=Searchresults&pos=11&page=1 (last visited May 7, 2026)

[20] *Id.*

[21] Levi Strauss & Co., Q1 2026 Earnings Call Transcript (April 7, 2026), *available at* https://stockanalysis.com/stocks/levi/transcripts/547935-q1-2026/

PLAINTIFF'S CLASS ACTION COMPLAINT - 9

48.    Levi's public statements and actions thus confirmed two critical points: first, that tariffs were increasing Levi's costs on imported goods; and second, that Levi was making pricing decisions in direct response to those tariff-driven cost increases.

49.    These public admissions are consistent with Levi's broader financial disclosures during the Class Period. Levi reported strong, and in some periods improving, financials while simultaneously acknowledging tariff pressures and raising prices on items affected by tariffs. Levi did not simply absorb the full cost of the unlawful tariffs; rather, Levi passed on at least part of those costs to consumers through higher retail prices.

50.    Levi's own public statements and actions therefore establish a coherent timeline: Levi acknowledged tariff-driven cost increases and Levi selectively increased prices on affected goods during the tariff period.

51.    Plaintiff and Class members purchased products from Levi at tariff-inflated prices during the Class Period, while Levi now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

### E.    Levi's Tariff Windfall

52.    The President's tariff regime exceeded the statutory authority granted by IEEPA and invalidated the challenged tariff orders.[22] Following the SCOTUS decision, importers that had paid IEEPA tariffs—including Levi—became eligible to pursue refunds of those duties.

53.    On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered U.S. CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[23]

54.    The potential refund pool resulting from the invalidation of the IEEPA tariffs is enormous. Public reporting concerning the refund proceedings states that U.S. CBP estimated an

---

[22] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).
[23] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

"unprecedented volume of refunds," potentially involving 53,173,939 refunds across 330,566 importers if each entry subject to IEEPA duties is entitled to a refund.[24]

55. Levi importers the majority of its consumer goods and therefore stands to recover substantial sums if tariff refunds are paid. Indeed, Levi "estimates it has paid approximately $80 million under the IEEPA tariffs"[25] and it expects to recover this money from the government.[26]

56. Given Levi's scale as a major importer, Levi can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Levi previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Levi will recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiff and Class members.

57. In practical terms, Levi stands to receive a windfall: it has already recouped tariff costs from consumers through higher prices, and it now will recover those same unlawful tariff payments from the federal government.

## CLASS ALLEGATIONS

58. A class action is the proper forum to bring Plaintiff's claims under FRCP 23. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

59. This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

---

[24] *See* Thompson Hine LLP, *CIT Suspends Earlier Order Directing IEEPA Tariff Refunds* (Mar. 6, 2026), https://www.thompsonhinesmartrade.com/2026/03/cit-suspends-earlier-order-directing-ieepa-tariff-refunds/.)

[25] Levi Strauss & Co., Form 10-Q at 18 (April 7, 2026) available at https://www.sec.gov/Archives/edgar/data/94845/000009484526000020/lvis-20260301.htm

[26] Dan Mangan *et al.*, CNBC, *Trump says 'I'll remember' companies that don't seek tariff refunds* (April 21, 2026), *available at* https://www.cnbc.com/2026/04/21/trump-says-hell-remember-companies-that-dont-seek-tariff-refund.html (last visited May 7, 2026).

PLAINTIFF'S CLASS ACTION COMPLAINT - 11

60.    **Numerosity**: the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. Given the consumer base of Levi, the class numbers in the hundreds of thousands or millions of consumers.

61.    **Commonality:** the claims made by Plaintiff meets the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

    a.    whether Levi paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") on imported goods during the Class Period;

    b.    whether Levi increased retail prices on goods sold to consumers in response to those tariffs;

    c.    whether Levi passed through some or all of the tariff costs to consumers through higher prices;

    d.    whether Levi sought or will seek refunds of those tariffs from the federal government;

    e.    whether Levi's retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment;

    f.    whether Levi's conduct was unfair under applicable consumer protection laws; and

    g.    the appropriate measure of restitution, damages, or other relief resulting from Levi's conduct.

62.    **Typicality**: Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, bought products from Levi subject to tariff related price increases.

63. The claims of the Class Representative Plaintiff are furthermore typical of other Class members because they make the same claims as other Class members. Plaintiff has an interest in seeking compensation from Defendant.

64. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

65. **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

66. The nature of this action and the nature of California laws available to Plaintiff and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and

PLAINTIFF'S CLASS ACTION COMPLAINT - 13

individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

67. The proposed class is described as follows:

All persons in the United States who purchased goods from Levi during the period February 1, 2025, through February 24, 2026, on which Levi raised prices.

68. Plaintiff reserves the right to modify or amend the definition of the proposed class and to modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

69. Plaintiff will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiff is represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

70. The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

71. Excluded from the Class are:

a. Defendant and any entities in which Defendant has a controlling interest;

b. Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c. The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d. All persons or entities that properly execute and timely file a request for exclusion from the Class; and

e. Any attorneys representing the Plaintiff or the Class.

PLAINTIFF'S CLASS ACTION COMPLAINT - 14

## CLAIMS FOR RELIEF

### COUNT I
### Unjust Enrichment
### (On behalf of Plaintiff and the Class)

72.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73.     Plaintiff and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them in the form of price increases on goods during the period February 1, 2025, through February 24, 2026.

74.     Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

75.     Under principles of equity and good conscience, Defendant should not be permitted to retain the amount of the price increases obtained from Plaintiff and the members of the Class, which Defendant has unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

76.     Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

### COUNT II
### Money Had and Received
### (On behalf of Plaintiff and the Class)

77.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

78.     Plaintiff alleges this claim individually and on behalf of the proposed class.

PLAINTIFF'S CLASS ACTION COMPLAINT - 15

79. Defendant received money from Plaintiff and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

80. The money belonged to Plaintiff and to each member of the proposed Class.

81. Defendant has not returned the money.

82. It will give offense to equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiff seeks the return of the money in an amount to be proven at trial.

83. Plaintiff seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to him.

**COUNT III**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of Plaintiff and the Class)**

84. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85. Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

86. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

87. Levi acted with knowledge and intent.

88. Defendants' conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. Levi engaged in unfair and deceptive acts by: (i) charging customers a tariff surcharge; and (ii) retaining tariff refunds despite having passed the costs to its customers.

PLAINTIFF'S CLASS ACTION COMPLAINT - 16

89.     Levi's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Levi's violation of consumer protection and unfair competition laws resulted in harm to consumers.

90.     Defendants' wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendants were engaged in sales nationwide.

91.     Defendants have profited immensely from its unlawful conduct.

92.     As a result of Defendant's conduct, Plaintiff and the Class members were injured in their business or property—*i.e.*, economic injury—in that they paid inflated prices for goods subject to tariffs.

93.     As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.

94.     Defendant's unfair or deceptive conduct proximately caused Plaintiff's and the Class members' injury because, but for the challenged conduct, Plaintiff and the Class members would not have paid inflated prices for goods subject to tariffs and they did so as a direct, foreseeable, and planned consequence of that conduct.

95.     The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

96.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

97.     Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendants because of their unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**COUNT IV**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiff and the Class)**

98.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

99.    Levi is a "person" as defined by California Civil Code § 1761(c).

100.    The California Plaintiff and the other California class members are "consumers" within the meaning of California Civil Code § 1761(d).

101.    For the reasons alleged above, Levi violated California Civil Code § 1770(a)(5)(7) and (9).

102.    Levi's unfair and deceptive acts or practices occurred repeatedly in Levi's trade or business.

103.    Levi acted with knowledge and intent.

104.    Levi engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

105.    With respect to restitution under the CLRA claim, there is no adequate remedy at law for the reasons already alleged above.

106.    As a result of Levi's misconduct, the Plaintiff and other Class members have suffered monetary harm.

107.    Plaintiff seeks all relief available under this cause of action.

**COUNT V**
**Declaratory Relief, 28 U.S.C. § 2201**
**(On behalf of Plaintiff and the Class)**

108.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

109.    Plaintiff alleges this claim individually and on behalf of the proposed Class.

110.    Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

PLAINTIFF'S CLASS ACTION COMPLAINT - 18

111.   Plaintiff's claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

112.   Plaintiff has suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiff will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

113.   This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiff but refunded to Defendant is unlawful for any of the above reasons.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the proposed class pray for relief and judgment against Defendant, as follows:

a.   For an order certifying the proposed classes, appointing Plaintiff and his counsel to represent the proposed class and notice to the proposed classes to be paid by Defendant;

b.   For damages suffered by Plaintiff and members of the proposed class;

c.   For restitution to Plaintiff and the proposed class of all monies wrongfully obtained by Defendant;

d.   For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

e.   An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f.   For Plaintiff's reasonable attorneys' fees, as permitted by law;

g.   For Plaintiff's costs incurred;

h.    For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i.    For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

DATED this 18ᵗʰ day of June. 2026.

Respectfully submitted,

By: */s/ M. Anderson Berry*
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
333 University Ave.
Sacramento, CA 95825
Phone: 916.823.6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Jason T. Dennett*
**MILBERG, PLLC**
1700 7ᵗʰ Ave, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
*gklinger@milberg.com*

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
*jnelson@milberg.com*

Terence R. Coates*
Jonathan T. Deters*
**MARKOVITS, STOCK
& DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
*tcoates@msdlegal.com*

PLAINTIFF'S CLASS ACTION COMPLAINT - 20

*jdeters@msdlegal.com*

Zachary Arbitman*
Nicole A. Maruzzi*
**FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
*zarbitman@feldmanshepherd.com*
*nmaruzzi@feldmanshepherd.com*

*Counsel for Plaintiff*

\**Pro Hac Vice* applications forthcoming